## 12296

### HYDRICK *ET AL.* v. HYDRICK

#### (141 S. E., 156)

1. APPEAL AND ERROR—CIRCUIT COURT DECREE DECLARING DOCUMENT WAS NOT DONATIO CAUSA MORTIS, GIFT INTER VIVOS, OR PROMISSORY NOTE, UNAPPEALED FROM, IS CONCLUSIVE THAT DOCUMENT COULD NOT BE RECOVERED ON AS GIFT OR NOTE.—In action to cancel instrument containing note, circuit court decree declaring that document could not be recovered on by defendant as a donatio causa mortis, or gift inter vivos, or promissory note, unappealed from by defendant on such points, is conclusive that document cannot be recovered on as gift or note.

2. CONTRACTS—TO REGARD DOCUMENT AS CONTRACT EXECUTED BY DECEDENT AS CONTRACT, IT MUST APPEAR THAT DECEDENT RECOGNIZED LEGAL OBLIGATION TO COMPENSATE DEFENDANT FOR SERVICES AND POSITIVE ENGAGEMENT TO RESPOND TO OBLIGATION.—In action involving counterclaim on document executed by decedent containing statements moving decedent to execute document followed by note to defendant, document to be regarded as contract requires showing that decedent recognized legal obligation to compensate defendant for alleged services, together with positive engagement to respond to such obligation.

3. GIFTS—WRITTEN INSTRUMENT RECITING THAT DECEDENT DESIRED TO "GIVE" DEFENDANT NOTE IN RECOGNITION OF SERVICES INDICATED INTENDED GIFT, NOT INTENTION TO DISCHARGE OBLIGATION.—Written instrument executed by decedent containing note to defendant reciting desire to "give" defendant note in recognition of his services indicated intention to make gift, not to discharge obligation in payment of services.

4. GIFTS—CONDITION IN INSTRUMENT CONTAINING NOTE TO DEFENDANT THAT VALIDITY SHOULD DEPEND ON MAKER'S NOT RECOVERING FROM EXISTING MALADY HELD INCONSISTENT WITH INTENTION TO CREATE DEFINITE OBLIGATION ·FOR SERVICES RENDERED.—Where written instrument executed by decedent containing note to defendant, validity of which was made conditional on decedent's failure to recover from malady from which she was then suffering, condition was inconsistent with intention to create definite obligation for services rendered.

5. BILLS AND NOTES—PAYEE OF NOTE CONDITIONED ON MAKER'S NOT RECOVERING FROM EXISTING MALADY HAS BURDEN OF ESTABLISHING VALUABLE CONSIDERATION.—In action involving claim on note exe-

cuted by decedent to defendant, conditioned on maker's not recovering from existing malady, defendant has burden of establishing element of valuable consideration, or paper is construed as testamentary in character and void.

6. BILLS AND NOTES—INSTRUMENT CONDITIONED ON MAKER'S DEATH FROM EXISTING MALADY HELD NOT VALID AS NOTE, BUT SUSTAINABLE AS CONTRACT.—Instrument executed by decedent, validity of which was made dependent on decedent's failure to recover from existing malady, could not be sustained as note, since death of decedent from existing illness was matter of uncertainty, but instrument might be regarded as contract, if intended to constitute present obligation and supported by valuable consideration.

7. CONTRACTS—EXISTING OBLIGATION BASED ON PAST TRANSACTION IS CONSIDERATION FOR CONTRACT.—Existing obligation based on past transaction would be sufficient valuable consideration for contract.

8. WILLS—INSTRUMENT CONTAINING NOTE, TO CONSTITUTE CONTRACT INSTEAD OF INSTRUMENT OF TESTAMENTARY CHARACTER, MUST HAVE CREATED PRESENT VESTED RIGHT.—Written instrument by decedent containing note to defendant, to be recovered on as contract to pay for services rendered, required creation of present vested right in defendant, or instrument would be testamentary in character and void.

9. WILLS—INSTRUMENT, IF PASSING PRESENT INTEREST WITH FUTURE ENJOYMENT, IS "DEED" OR "CONTRACT," BUT, IF NOT PASSING INTEREST TILL DEATH OF MAKER, IS "TESTAMENTARY PAPER."—Instrument, if passing present interest, though right to possession and enjoyment does not accrue until some future time, is deed or contract, but, if not passing any interest or right till death of maker, is will or testamentary paper.

10. WILLS—PREAMBLE WRITTEN ON SAME SHEET EXECUTED BY DECEDENT CONTAINING NOTE MUST BE READ AS PART OF DOCUMENT.—Preamble on written instrument executed by decedent containing note and reciting that, if decedent recovered she was to be released from obligation, being written on the same sheet, was required to be read as part of the document.

11. WILLS—EVIDENCE HELD TO SHOW THAT INSTRUMENT EXECUTED BY DECEDENT CONDITIONED FOR VALIDITY ON DECEDENT'S FAILURE TO RECOVER FROM EXISTING ILLNESS WAS INTENDED TO EFFECT TESTAMENTARY GIFT.—Written instrument executed by decedent containing note to defendant reciting in its preamble that defendant will release decedent from obligation if decedent recovers and evidence showing that decedent, if recovering, might desire to change instru-

ment, did not show intention to create a present definite obligation, but rather intention to make testamentary gift.

12. CONTRACTS—PERSONS MAY AGREE IN WRITING ON VALUABLE CONSIDERATION THAT SUM BE PAID TO ANOTHER AT DEATH OF PROMISOR.— One may on valuable consideration agree in writing that certain sum be paid to another at death of party so promising.

13. JUDGMENT—CANCELLATION OF INSTRUMENT CONTAINING NOTE AS TESTAMENTARY WOULD NOT BAR ACTION FOR SERVICES.—Instrument executed by decedent containing note to defendant, if held invalid because testamentary in character and not creating present existing obligation to pay for services rendered, would not be bar to enforcement of claim for services.

14. SET-OFF AND COUNTERCLAIM—COUNTERCLAIM BASED ON QUANTUM MERUIT FOR SERVICES EVIDENCED BY CONTRACT IS NOT AVAILABLE IN ACTION TO CANCEL CONTRACT.—In action to annul an alleged contract claimed to have been executed for services performed, counterclaim based on *quantum meruit* for services rendered evidenced by written contract is not available.

15. ATTORNEY AND CLIENT—ATTORNEY CLAIMING BENEFIT OF TRANSACTION BETWEEN HIMSELF AND SISTER, WHO WAS HIS CLIENT, HAS BURDEN OF ESTABLISHING BONA FIDES OF TRANSACTION.—Where attorney and confidential advisor of his sister claims benefit of transaction between himself and deceased sister, burden is on attorney to establish clearly absolute *bona fides* of transaction.

Before DENNIS, J., Orangeburg, June, 1925.   Reversed.

Suit by Onan A. Hydrick and others, executors of the will of Henrietta H. Caskey, deceased, against John H. Hydrick, in which the defendant filed a counterclaim. Decree for defendant, and plaintiffs appeal.

The decree of Circuit Court directed to be reported, was as follows:

### OPINION AND JUDGMENT

This action was duly commenced by the service of a summons and complaint upon the defendant.

The complaint, *inter alia,* alleges that the plaintiffs are executors of the last will and testament of Mrs. Henrietta H. Caskey, deceased; that the defendant is a coexecutor of the said will; that the executors have duly advertised for the

creditors of the estate of Mrs. Caskey to file and prove their claims; that they are now ready to file their final account; but that the defendant, their coexecutor, holds a written instrument, purporting to be signed by the testatrix, promising or directing the payment of the sum of $5,000.00, with interest to each the defendant and one Mrs. Margaret H. Laval, the brother and sister, respectively, of the testatrix; that such demand is outstanding against the estate of Mrs. Caskey; and that her estate cannot be settled finally until this demand, which is in the nature of a cloud thereon, is disposed of; and by way of relief demand that such written instrument be canceled and surrendered up to the plaintiffs.

The defendant by his answer sets up six defenses, namely, (1) that after admitting the execution and his possession of the written instrument in question he denies the remaining allegations of the complaint; (2) that the testatrix for value executed and delivered to him the written instrument in question, which is a note and is enforceable against her estate as a promissory note; (3) that such written instrument constituted a gift *causa mortis* to him of the amount therein named; (4) that the written instrument in question constituted a gift *inter vivos* to him; (5) that for a number of years he performed many useful and valuable services, both of a business and professional nature, for his sister, and that such services were reasonably worth $5,000.00, payment of which he demanded; and (6) that he entered into a contract with his sister in her lifetime to attend and manage her business affairs and property generally, which services he performed, and that she agreed to pay him therefor the sum of $5,000.00, payment of which he now demands.

Issue being then joined, the counsel for plaintiffs docketed the case upon Calendar 1; and it came on to be tried before me with a jury at the March, 1925, term of the Court of Common Pleas for Orangeburg County. After taking and hearing the testimony, and after argument of counsel,

followed by a charge upon the law by the Court, the jury rendered a verdict for $800.00 for the defendant. Thereupon the counsel for plaintiffs moved for a new trial upon the minutes of the Court; and the counsel for defendant moved for a new trial upon the ground of inadequacy. The Court granted a new trial.

Thereafter and upon due notice the counsel for the plaintiffs moved to strike out the defenses setting up a gift *causa mortis* and a gift *inter vivos,* and also to strike out the defenses setting up the written instrument as a note, and as a contract. Also, the defendant upon due notice moved the Court to amend his answer by adding after the words, "for a sixth defense," the words, "and by way of counterclaim."

The two motions came on to be heard before me in open Court at the April, 1925, term of the Court of Common Pleas for Orangeburg County; whereupon it was agreed by and between counsel for both parties that such motions should be heard before me at the time of trial of the cause, and preliminary thereto, and that jury trial being waived the case should be heard and tried before me without jury upon the evidence taken at the first trial, transcribed by the stenographer, together with such additional evidence as either of the parties cared to offer at the trial before me. The case then came on to be tried before me upon this agreement and without a jury. I granted the motion of the plaintiff to strike out the defense setting up the written instrument in question as a gift *causa mortis.* A note cannot be the subject of a gift *causa mortis. Hall v. Howard,* Rice, 310, 33 Am. Dec., 115; 12 R. C. L., 995. Also I granted the motion to strike out the defense setting up the written instrument in question as a gift *inter vivos.* A note cannot be the subject of a gift *inter vivos.* 12 R. C. L., 940.

In respect to the motion of the defendant to be allowed to amend his answer by making his sixth defense also a counterclaim, under my view of the pleadings this was un-

necessary; but I stated he could, if so desired and advised, thus amend his answer.

The plaintiffs, then, by agreement filed a reply thereto; such reply being a general denial. At this stage of the trial the plaintiffs moved for judgment upon the pleadings, contending, among other things, that the answer stated no facts sufficient to constitue a defense. This motion I overruled and proceeded with the trial of the case.

The transcript of the evidence taken at the first trial was then, according to agreement of counsel, submitted in evidence; and the plaintiffs offered some additional evidence, as shown by the minutes. After brief oral argument it was agreed that counsel might submit written points and authorities, and the case thereafter be decided by me. I have carefully considered the evidence in the case and applying thereto what I conceive to be the well-settled rules of law now endeavor to decide the case in accordance therewith.

In respect to the objections interposed by the plaintiffs to certain of the testimony given by the defendant, such objections being based upon Section 708, Code of Civil Procedure 1922, I sustain objections and hold that the defendant could not testify as to any transactions or communications with his deceased sister, Mrs. Henrietta H. Caskey; and, of course, I have not considered such testimony in the determination of this case.

Briefly stated the facts in this case are as follows: Mrs. Henrietta H. Caskey, before marriage, was the daughter of the late Dr. A. S. Hydrick, of Orangeburg, and a niece of the late Associate Justice D. E. Hydrick, of Spartanburg. Her husband was Commander Caskey, of the United States Navy, who died at sea during the World War, and while in command of a battleship off the coast of France. Commander Caskey's home was in Detroit. Under his will he left all, or a large part, of his estate to his wife, who owned considerable property, both real and

personal, in her own right. She died in March, 1920, leaving of force her will, which was drawn by her uncle, Justice Hydrick, a short time before her death, and while she was stricken with a mortal illness in a hospital in Columbia. She left surviving her her sister, Mrs. Margaret H. Laval, of Columbia, and her two brothers, the defendant, John H. Hydrick, and Dr. D. J. Hydrick, both of Orangeburg. At the time of her death her brother Dr. Hydrick was ill in Johns Hopkins Hospital. She also left surviving her a nephew, who was the son of her predeceased brother, Commander Lawton H. Hydrick, who also died during the World War, while Commandant of the United States Navy Yard at Portsmouth, N. H. In her will she provided a fund of which the interest was to be used each year for the education of some worthy young man or woman graduating from the Orangeburg high schools. Then she gave both real and personal property of considerable amount to her cousin, Capt. Onan A. Hydrick, who served abroad during the World War. Then she gave both personal and real property to her surviving brothers, sister and nephew. Then she provided a fund by way of residuary estate to be used for the education of the children of her brothers, sister, and cousin, Capt. Onan A. Hydrick, in case they were not able to afford such education. Mrs. Caskey's estate was valued at about $75,000. She provides in her will for the payment of all of her debts.

A few days before her death, and shortly after the execution of her will she executed the following document or instrument of writing:

"Columbia Hospital, February 14, 1920.

"Uncle Dan tried to fix me a will and said he was proud of it. That it was a fine legal document, but it does not fully represent my wishes and he tried so hard to please me, but it seems I just could not make him understand, but I have been so harassed and worried into making a will

by Onan and suffering such agony I simply had to sign it upon presentation to have any peace of mind. Margaret and the nurses have been so kind and loving and John Henry so much help and service in my business and other ways, I want to give them notes, I don't know how Dempsey is, he never comes to see me and I don't believe he ever returned from the hospital. John says if I get well, he will not deliver the note to Margaret and will release me from the obligation.

.''Columbia Hospital, February. 14, 1920.

"One year after date I promise to pay to Margaret H. Laval five thousand dollars; and also to John H. Hydrick five thousand dollars, with interest thereon · from date at the rate of 8 per cent. per annum payable annually. Value received. Payable at Orangeburg, S. C.

"Henrietta H. Caskey."

The construction and enforcement of this written instrument constitutes the subject-matter of this action. The plaintiffs contend that it is void and cannot now be enforced in any manner. On the other hand, the defendant, John H. Hydrick, contends that it is a valid obligation, which should be enforced.

The plaintiffs contend, firstly, that the instrument is either an attempt to change her will without the formalities required by law, or an attempted promissory note, and void under the rules of law.

The defendant, claiming the right to set up as many and inconsistent defenses as he may elect in his answer (*Millan v. Southern Railway,* 54 S. C., 485; 32 S. E., 539), demands recovery of the $5,000, with interest, upon either or both of three grounds, to wit: (1) It is a valid promissory note; (2) the instrument of writing constitutes a contract between himself and his sister, now deceased; and (3) he is entitled to recover the value of his services, which

are worth $5,000, and that he rendered the services, and
that such services were reasonably worth the sum of $5,000
is not only shown by the evidence, but is established by
"the written instrument as a matter of evidence."

Then the plaintiffs contend, secondly, that even if the
demand be a valid one it is now, or ought to be, barred for
the reason that the defendant failed to file and prove his
alleged claim under the call for creditors long since made.
This contention is conclusively settled against the plaintiffs
in the case of *McNair v. Howle,* 123 S. C., 252; 116 S.
E., 286.

This now brings us squarely to the real issue in the case,
to wit: Has the defendant a valid and enforceable claim
against the estate for $5,000, with interest, or for any
amount? There is no question, according to the evidence,
that the defendant rendered service, both of a business
and professional nature (he being a lawyer), to his sister
before and up to the time of her death. There was no
legal or moral obligation upon the defendant to render such
services gratuitously to his now dead sister. *Jones v. Jones,*
129 S. C., 8; 123 S. E., 764, and cases cited.

Upon proof that such services were rendered "the pre-
sumption arose that there was an implied obligation upon
him [the sister here] to compensate her [him] for the serv-
ice rendered, and the burden was upon the administrator
to remove that presumption." *Jones v. Jones supra.* It is
also well settled that if the services were rendered without
expectation of compensation then there can be recovery
therefor. *Jones v. Jones, supra.*

In the instant case the evidence, including the written
instrument, shows that such services were rendered by the
defendant, who expected compensation therefor, and that
the testatrix intended to compensate him; which I find as
a matter of fact to be the case. I do not think that the con-
tention of the defendant that the written instrument in ques-

tion constitutes a valid and enforceable demand as a promissory note can be sustained, and I so find and decide as matter of law and fact.   3 R. C. L., 834.

This brings us now to the contention of the defendant that the written instrument in question constitutes a valid and enforceable contract between himself and the estate of his sister for the payment of $5,000, with interest, to him for services rendered to her during her lifetime.   The written instrument, as well as surrounding circumstances, in this case are quite alike those involved in the case of *Caviness v. Rushton,* 101 Ind., 500; 51 Am. Rep., 759; 3 R. C. L., 385.

In the *Caviness Case, supra,* it was held that, while the instrument could not be enforced as a note, yet it constituted a valid and enforceable contract; the Court saying: "The services were rendered in accordance with a precedent request, and, after they were performed, a settlement was had and their value agreed upon.   Not only were all the elements of a valid contract present, but there was a full recognition, by settlement, of the right to compensation and an agreement as to the amount.   What the parties have thus agreed upon and adjusted, the Courts have no right to disturb."

The language of the instrument in the *Caviness Case, supra,* was: "I promise Emily Caviness to give her two thousand dollars at my death to take care of her children with, which she claims of my estate.   She has been in my family nineteen years and a faithful servant, and it is my will to her."

In the instant case the terms of the agreement, the statement of consideration, the acknowledgment of the services or consideration, and the time of payment are all much more clearly expressed.

It is well settled that, where a written instrument may not be enforced as a promissory note, it may be deemed a

contract between the parties, or rather as evidence of a contract, and enforceable as such.

The consideration necessary to support a contract may be founded upon services theretofore rendered, but as yet unpaid. 8 C. J., 215. From the fact that services theretofore rendered were beneficial it may be inferred that a previous request was made, and especially is this true when there is no testimony negativing this fact. 13 C. J., 361. Accordingly, I have reached the conclusion that the written instrument in question is a contract between the parties, or rather evidence of a contract between them, and is enforceable as such.

The testatrix, Mrs. Caskey, was doubtless an intelligent woman. The interests were considerable, requiring considerable care and attention. She selected her brother, the defendant, to perform this task. Her estate is ample to pay her obligations, and still leave a sufficiency to pay her bequests and devises. The defendant performed the services she desired. His work was evidently of a satisfactory nature. She fixed the price, and acknowledged in writing her obligation to pay him. She executed the written instrument before us and delivered it to him. As was said in the *Caviness Case, supra,* "what the parties have thus agreed upon and adjusted, the Courts have no right to disturb."

The Court finds, as its verdict, that the defendant, John H. Hydrick, is entitled to recover from the plaintiffs, as executors of the estate of Mrs. Henrietta H. Caskey, deceased, the sum of $5,000, with 8 per centum interest per annum, payable annually, from February 14, 1920, to date, amounting to $2,100.

*Messrs. Hydrick & Whetstone,* and *Brantley & Zeigler,* for appellants, cite: *Principles which distinguish between a document as a will and a contract:* 2 Spears, 225; Spears Equ., 256; 2 Strob. Eq., 343; 9 Rich. Equ., 111; 92 Am. Dec., 381; 1 Strob. Eq., Star page, 128. *Construction of contract:* 9 Cyc., 577, 578, 590; 13 C. J., 521, Sec. 482;

Id., 544, Sec. 516; Id., 531, Sec. 489; 124 S. C., 285; 6 R. C. L., 837; 120 S. E., 64; 14 S. E., 162; 2 Bail., 55; 102 S. C., 227. *"Contract":* 1 Will. Contracts, Secs. 1, 7. *"Promissory note":* 4 Page Law of Contracts, Sec. 2305, 59 S. C., 69; 2 A. & E. Enc., 314; Daniel on Neg. Inst. (5th Ed.), 38. *Must contain a certain promise to pay:* 56 Am. Dec., 474; 47 Am. Dec., 247; 6 N. E., 586; 25 Am. Rep., 273; 33 S. E., 62. *Where no consideration, nudum pactum, and note is not subject of a gift causa mortis:* Rich. Eq. Cas., 26; Rice L. Rep., 310. *"Gift causa mortis":* Tol. Law of Ex., 223. *Action founded upon an express contract does not admit of a recovery on a quantum meruit:* 119 S. C., 259; 130 S. E., 758; 16 S. C., 192; 48 S. C., 298; 84 S. C., 73; 91 S. C., 284; 87 S. C., 250; 94 S. C., 406. *Counterclaim:* Bliss Code Pl. (3d Ed.), 348, 386, 389; 78 S. C., 162; 30 S. C., 111; Pom. Rem. & Remedial Rights (2d Ed.), Sec. 726, 765. *That which was originally intended as gratuity cannot afterwards be converted into a debt:* 2 Bay, 101; 2 Bail., 308; 36 Mich., 124. *When a relationship of trust and confidence is established betwixt contracting parties, party who benefitted from transaction must prove same was fair:* 110 S. C., 407; 61 S. C., 501; 38 S. C., 158; 34 S. C., 255. *Cases distinguished:* 51 Am. Rep., 759; 123 S. C., 252.

*Messrs. Wolfe & Berry,* and *E. C. Mann,* for respondent, cite: *Judgment cannot be awarded upon the pleadings when there is any issue or defense interposed:* 112 S. C., 162. *Defendant may set up in his answer as many and inconsistent defenses as may be desired:* 54 S. C., 488. *Immaterial upon what grounds trial Judge bases his conclusions provided same are correct:* 107 S. C., 216. *There was no legal or moral obligation upon defendant to render gratuitously services to his now dead sister:* 123 S. E., 174. *Consideration necessary to support a contract may be founded upon services theretofore rendered, but as yet unpaid:* 8 C. J., 215. *Presumption that services were re-*

*quested:* 8 C. J., 361. *What parties have agreed upon and adjusted, the Courts have no right to disturb:* 3 R. C. L., 385; 51 Am. Rep., 759. *Note at bar valid and enforceable:* 3 R. C. L., 935, 940; 110 Md., 539; 179 Ala., 521; 14 L. R. A., 860; 42 L. R. A., 797; 93 Md., 716. *"Gift":* 28 L. R. A., 187; 46 A. S. R., 221; 51 N. Y. S., 130; 55 N. Y., 68; 87 Fed., 630–635; 71 Mo., 585. *Contract:* 124 S. C., 286; 88 S. E., 768; 100 S. E., 152; 31 Mich., 247; 87 S. E., 718; 42 N. Y. Rep., 363. *Extent of recovery by defendant:* 64 N. Y. Rep., 596; 92 S. C., 114. *No presumption of fraud:* 117 S. C., 459. *Not a testamentary disposition:* 110 Md., 539; 179 Ala., 521; 93 Md., 716; 42 N. Y. Rep., 363.

October 27, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

I do not agree to the affirmance of the decree of his Honor, Judge Dennis, in this case, as announced in the opinion of the Chief Justcie, for the reasons which follow:

This action was instituted by the plaintiffs, two of the three executors of the will of Mrs. Henrietta H. Caskey, deceased, against the defendant, John Henry Hydrick, the third executor, but in his individual capacity, for the purpose of having declared void and surrendered for cancellation a certain document signed by her a short time before her death, and delivered to the defendant, her brother. The document, upon a single sheet of writing, contains a preamble of certain statements moving Mrs. Caskey, followed by a note dated February 14, 1920, due one year after date, by which Mrs. Caskey promises to pay to her sister, Mrs. Laval, and to her brother, the defendant, each $5,000, with interest from date at 8 per cent. per annum, payable annually. The document is reproduced in the Circuit Decree, to which reference is made. Let the Decree be reported.

The executors, desirous of making a final settlement of the estate, were embarrassed by the outstanding claim of the defendant under the document in question (Mrs. Laval having brought suit to recover her interest under it, and having suffered a nonsuit), and invoked the aid of the Court to have the document, so far as it purported to create an obligation in favor of the defendant, annulled, alleging that it constituted no binding obligation upon the estate, for various reasons which will be adverted to. The main contention of the plaintiffs is:

"That it was not delivered as and for a binding obligation, and under its terms could constitute no promise to pay money until after the death of the said Henrietta H. Caskey."

The defendant disputed the right of the plaintiffs to have the document annulled, alleging that the note constituted a *donatio causa mortis,* a gift *inter vivos,* and was supported by a valuable consideration, services rendered by the defendant to Mrs. Caskey, at her special instance and request. He also interposed a counterclaim, as upon a *quantum meruit,* for services rendered Mrs. Caskey, valued at $5,000.

The plaintiffs interposed what may be treated as a demurrer to the answer of the defendant, upon the grounds:

(1) That the note does not constitute a binding obligation upon the estate, in that (a) it is not an unconditional promise to pay; (b) it is not a gift *inter vivos,* for the reason that a note is not the subject of such a gift; (c) it is not a *donatio causa mortis,* for the same reason.

(2) That the alleged counterclaim does not state facts sufficient to constitute a counterclaim.

Although the alleged cause of action of the plaintiffs is manifestly one of strict equitable cognizance, the case was docketed by the plaintiffs, on calendar 1, for trial by a jury, and at the March Term, 1925, it was so tried before his Honor, Judge Dennis. A verdict in favor of the defend-

ant for $800 resulted, which, upon motion of the plaintiffs, consented to by the defendant, was set aside by the presiding Judge and a new trial ordered.

At the April Term, also presided over by his Honor, Judge Dennis, the case was transferred by consent, to calendar 2, for trial by the Court, without a jury. By agreement the testimony taken at the first trial, transcribed by the stenographer, was accepted as the evidence upon the second trial by the Court, certain objections thereto being reserved to be passed upon by the trial Judge.

Judge Dennis filed an "Opinion and Judgment," dated June 25, 1925, in which he sustained the positions of the plaintiffs that the note did not constitute a *donatio causa mortis;* that it did not constitute a gift *inter vivos;* and that the written instrument did not constitute a valid and enforceable demand as a promissory note; but he held that the evidence, including the written instrument, showed that the defendant had rendered services to Mrs. Caskey during her lifetime, for which he expected, and she intended to make, proper compensation; that the written instrument clearly expressed the terms of an agreement between Mrs Caskey and the defendant, the statement of the consideration, and the time of payment; that it "is a contract between the parties, or rather evidence of a contract between them, and is enforceable as such."

While allowing the defendant to set up this obligation as a counterclaim, and the plaintiffs to reply to it, he apparently did not consider it necessary that it be set up as such, and based his decision upon the existence of a contract between Mrs. Caskey and the defendant that the *defendant* should be compensated for the services rendered, in the amount of the note. He accordingly rendered judgment in favor of the defendant against the executors for $5,000, with interest at 8 per cent. per annum, payable annually from February 14, 1920 (the date of the questioned document) ; the interest amounting to $2,100; a total of $7,100.

From this decree the plaintiffs have appealed upon 34 exceptions. I shall not consider them *seriatim;* life is too short; but in my opinion the questions controlling the decision are within a very narrow compass, as I shall endeavor to show.

A brief review of the circumstances connected with this case of more than ordinary interest appears necessary to an understanding of the situation. Mrs. Caskey was the daughter of Dr. A. S. Hydrick, of Orangeburg, who was a brother of Hon. D. E. Hydrick, now deceased, for nearly 12 years an honored member of this Court. Mrs. Caskey was therefore a niece of Mr. Justice Hydrick. Her husband, Commander Caskey of the United States Navy, had died at sea during the World War, and in the latter part of the year 1919 she was taken to the Columbia Hospital, suffering from a malignant and lingering malady. At her request Judge Hydrick prepared a most elaborate and carefully drawn will, covering eight pages of the printed record in this case. It was executed on February 11, 1920. Aside from the evidences of most careful preparation and inclusiveness, the only portions of the will that have any special significance in the decision of the issues now involved are these: In Item 4-B it is provided:

"I give to my brother John Henry Hydrick, his indebtedness to me, whether evidenced by note or otherwise, and release him and his representatives from all liability thereon to my estate."

The will contained also a devise of a one-fourth interest, in two tracts of land aggregating 820 acres, to John Henry Hydrick, for life, with remainder "to his issue *per stirpes* as purchasers"; and the residue of the estate, after certain devises, legacies, and trusts, was directed to be placed in truct for the education of the children of John Henry Hydrick, and a nephew, and the children of four others named, with ultimate division among the beneficiaries referred to. The estate is said to be worth some $75,000; and while it

is difficult to estimate the value of this residue, it apparently is not insignificant, over $20,000 as estimated, from which the judgment in this case must be paid, if confirmed by this Court.

On February 14, 1920, three days after the execution of the will on the 11th, the defendant visited his sick sister in the hospital. He says in his testimony: "She was then in a dying condition and suffering intense pain." In view of the fact that the document was entirely in the handwriting of the defendant, with the exception of the signature, and of his declaration that he had only "a few moments alone with her," it may be assumed that he had prepared the document in advance of his visit. After this brief but momentous interview, the defendant left the hospital, carrying with him the signed document. For nearly 4 years thereafter not a soul was informed of its existence or purport.

After the death of Mrs. Caskey on March 12, 1920, and the qualification of the executors, John Henry Hydrick executed a receipt to the executors, dated November 22, 1920, for:

"One note in the sum of $2,800, dated January 23, 1919, payable to Henrietta H. Caskey, and which note represented all of the indebtedness referred to in Item 4-B of the will of the said Henrietta H. Caskey."

On March 7, 1922, the defendant as executor, with the other two executors, issued a call for the presentation of claims against the estate. Not a word came from him in reference to the note under which he claims over $7,000, or to his unpaid claim for services to his dead sister. He did, however, file a claim against the estate for $515.20, the same being for rent collected by her from tenants who had cultivated, as it turned out, a part of the land which belonged to him, which claim was allowed by the probate Judge and paid.

On February 28, 1923, the three executors filed a Federal estate tax return, signed by all and sworn to, in Schedule 1 of which the debts of the decedent were set forth; following the admonition, "Itemize fully below all the valid debts of the decedent due and owing at the time of death," various debts were scheduled, including, "1915-1918, Inc., John H. Hydrick, claim for rent collected by decedent, $515-.12"; the $5,000 document does not appear, nor does his alleged claim of that or any other amount for services rendered.

On October 23, 1923, for the first time, the defendant disclosed the existence of the document and its purport, in a letter written by him to his sister Mrs. Laval, although she was jointly interested with him in the note set forth therein. His excuse for this unaccountable reticence and concealment was the fear that certain expressions in the preamble might precipitate an attack upon the will which evidently, on account of the liberal provisions therein for himself and his children, he was anxious to have sustained. He continued to procrastinate the active assertion of his claim under the document, and it was only when this action was brought to bring the matter to a head that the issue was presented.

The defendant testified that, at the time the document was executed, he and Mrs. Caskey agreed upon $5,000 as the proper compensation for the services which he had rendered to her. In the Circuit Decree this occurs:

"In respect to the objections interposed by the plaintiffs to certain of the testimony given by the defendant, such objections being based upon Section 708, Code of Civil Procedure, 1922, *I sustain such objections and hold that the defendant could not testify as to any transactions or communications with his deceased sister Mrs. Henrietta H. Caskey;* and, of course, I have not considered such testimony in the determination of this case."

So that all of the testimony of the defendant as to the character and value of the services which he claims to have rendered his sister, and of any agreement between them fixing the value and constituting a contract to compensate him, passes out of the case.

The Circuit Decree, unappealed from by the respondent upon these points, is conclusive that the document cannot be recovered upon as a *donatio causa mortis,* or as a gift *inter vivos,* or as a promissory note. There remains the sole question whether it can be recovered upon *as a contract;* that is to say, whether the Circuit Judge was correct in holding:

"I have reached the conclusion that the written instrument in question is a contract between the parties, or rather evidence of a contract between them, and is enforceable as such."

He recognizes the fact that the defendant can recover only upon this construction of the written instrument; all other considerations being eliminated.

In order that the concept of a contract may be extracted from the terms of the written instrument, inclusive of the preamble and the note, there must appear the recognition, by Mrs. Caskey, of a legal obligation on her part to compensate the defendant for the alleged services, and a positive engagement, definite and certain, to respond to that obligation. I do not think that this can be deduced from the terms of the document for several reasons:

1. It is very clearly indicated that Mrs Caskey intended to make a gift of $5,000 to the defendant and Mrs Laval, and nothing more. The moving cause to the gift in favor of Mrs. Laval was her kind and loving treatment, and to the gift in favor of the defendant his help and service in her business and other ways. She distinctly says so; that in consideration of these matters "I want to *give* them notes." "Margaret and the nurses have been so kind

and loving, and John Henry so much help and service in my business and other ways, I want to give them notes"; not in discharge of any obligation, but as *a gift*.

While the expression "give" does not necessarily imply a gift (as it is used often in the sense of "execute"), still it is a circumstance to be considered, particularly in view of the companion provision for Mrs. Laval, which is not suggested to have been otherwise than a gift, and was so decided in an action brought by her upon the identical document. It is entirely reasonable to suppose that the liberal provisions made for the defendant and his children by the will fully met any legal obligation she was under for his services. The document means that she had not by the will *given* Mrs. Laval and the defendant as much as she intended to *give* them.

2. The validity of the note is made to depend upon her failure to recover from the malady from which she was then suffering, a condition altogether inconsistent with a purpose then and there to create a definite obligation. She declares:

"John says if I get well, he will not deliver the note to Margaret, and will release me from the obligation."

If she *owed* the defendant $5,000 for his services, she owed it regardless of whether she recovered or not; if she intended to make a definite enforceable contract, it is passing strange that she should have so framed it that if she got well it would be no contract at all.

3. The note, by the terms of the preamble, was intended not to take effect until the death of Mrs. Caskey from her existing malady; that is if she did not "get well" of her then present illness. It is different from a paper payable at the death of the maker, for that is an event that is sure to take place sooner or later, and notes, supported by a valuable consideration, with that condition, have been sustained as notes, and even as negotiable

notes. 8 C. J., 136. The burden is upon the payee to establish the essential element of a valuable consideration, else the paper is construed as testamentary in character and void.

In the present case the note could never be sustained as a note, for the death of Mrs. Caskey from that illness was a matter of uncertainty. I do not think, however, that this uncertainty, while destroying the obligation as a promissory note, would destroy it as a contract, provided it be made to appear that the note was intended to constitute a present obligation, and was supported by a valuable consideration.

Unquestionably an existing obligation based upon a past transaction would supply the element of a valuable consideration, but in my opinion the other element of an intention to constitute a present definite and certain obligation is utterly wanting. There must have been the creation of a vested right in the defendant, else the paper is testamentary in character and void.

As in said in *Cover v. Steam,* 67 Md., 449; 10 A., 231; 1 Am. St. Rep., 406:

"There must be terms employed to create a *debitum in prasenti,* though the *solvendum* may be *in futuro,* and even after the death of the obligor."

Consult *Carter v. King,* 11 Rich., 125; *Godbold v. Vance,* 14 S. C., 459, note to 27 L. R. A. (N. S.), 308; 43 L. R. A. (N. S.), 785; 2 A. L. R., 1472.

The principle which distinguishes between a document as a will and as a contract is this: If the instrument passes a present interest, although the right to its possession and enjoyment may not accrue till some future time, it is a deed or contract; but, if the instrument does not pass any interest or right till the death of the maker, it is a will or testamentary paper.

In *Crawford v. McElvy,* 2 Speers, 225, referring to the document there in question, the Court says:

"It cannot, however, in any point of view, claim any higher rank than a paper to take effect at Mrs. Phillips' death. *That makes it testamentary,* and having but a single witness to its execution, it is void as a will."

In *Pitts v. Mangum,* 2 Bailey, 588, it was held that a parol gift of a slave to take effect at the donor's death, he reserving the use during his life, was testamentary in character and void.

To the same effect is *Ragsdale v. Booker,* referred to in *Pitts v. Mangum* and reported in a note to *Jaggers v. Estes,* 2 Strob. Eq., 343, at p. 348 (49 Am. Dec. 674), where the Court says:

"An essential distinction between a will and a deed is, that one is to take effect at the death; the other immediately."

In *Jaggers v. Estes,* 2 Strob. Eq., 343; 49 Am. Dec., 674, it is said:

"The distinction between a deed and a will is, that the former must convey an immediate interest at its execution, but the latter is quite the reverse; it is ambulatory, and passes no present interest or estate; it can only operate on the contingency and after the death of the testator."

To the same effect is *McGinney v. Wallace,* 3 Hill, 254; *Welch v. Kinard,* 1 Speers, Eq., 256.

This view is strengthened by two important circumstances: The preamble, written upon the same sheet, by the defendant, must of course be read as a part of the document. In it appears this statement: "John says if I get well, he will not deliver the note to Margaret *and will release me from the obligation,*" that is, the obligation of the note. As already suggested, if Mrs. Caskey had intended thereby to create a definite obligation to compensate the defendant for his services, she would not have limited her obligation upon the note to the circumstance of her

death; for if she owed him at all, the effectiveness of the obligation could not have been affected by her survival.

Again, the defendant testified that this clause was inserted by him, voluntarily, without the suggestion of Mrs. Caskey, for the reason:

"* * * She was sick *and I thought that if she got well she might want to change it,* and I voluntarily put that in there. * * * In case she did get well, I wanted her to see that I had given her an opportunity to fix it like she desired."

He has thus placed upon the provision an interpretation which absolutely concludes the question of its ambulatory character.

Both circumstances are entirely consistent with the idea of an attempted testamentary gift and inconsistent with that of a binding contract.

I do not contest the proposition that one may, upon a valuable consideration, agree in writing that a certain sum be paid to another at the death of the party so promising. As is said in the *Caviness case,* 101 Ind., 500; 51 Am. Rep., 759:

"The only difference between this case and that of an ordinary promise to pay for services is in the stipulation as to the time and manner of making payment."

See, also, 8 C. J., 136.

So that, if it can be deduced from the document in question that Mrs. Caskey intended to create a definite and certain obligation to pay the defendant for his services, conditioned only that it should be paid at or after her death, I see no reason why the obligation should not be deemed valid and enforceable. But as I see it, it is impossible to draw this deduction from the paper. On the contrary, it shows upon its face that it was intended as a gift, and, according to the testimony of the defendant himself, intended to be ambulatory.

As the Court holds in *Youngblood v. Norton,* 1 Strob. Eq., 122:

"Any act by which a decedent exercises a control in the disposition or distribution of property belonging to him at his death is, essentially, a testamentary act, and requires the formalities of a will."

Exactly what period his claim of $5,000 with interest extended over does not appear; but it does appear that in January, 1919, a little more than a year prior to the execution of the document, he borrowed from Mrs. Caskey $2,800, and gave his note for it, which under will was forgiven him. Nothing was taken into account in reference to it, in the questionable transaction of February 14, 1920, which is held by his Honor, the Circuit Judge, as a contract of settlement between the parties, and, notwithstanding the alleged crystallization of the indebtedness at that time, no change was made in the provision of the will for the surrender of that note to the defendant.

It is significant, too, that there is nothing in the document to indicate a settlement between them. If there had been, it would seem the natural thing to have provided for was that in consideration of the note the defendant should surrender his claim against her. According to his contention, she was bound, but he was not: He was free to accept the note or not as he saw fit.

Mrs. Caskey had, only three days before, executed her will. It bears every evidence of the most patient attention by Judge Hydrick to her many and complicated wishes. His character is a sufficient guaranty that she was capable of making a will. This after-written document, if allowed to stand, represents a codicil to that will, for it reduces by practically one-third the residue of her estate which constitutes the trust fund. The preamble indicates dissatisfaction with the will which Judge Hydrick had prepared, and an effort to change it by note, whereas that

effect could be accomplished only by a codicil. To hold it invalid erects no bar to the enforcement of a claim by the defendant for services rendered to her; and I see nothing but justice in remitting him to the forum of a jury of his country to establish it.

The case of *Caviness v. Rushton,* 101 Ind., 500; 51 Am. Rep., 759, so strongly relied upon by the Circuit Judge and by the respondent, presents a very different situation. There, the case was *decided upon a demurrer* to the complaint, which after alleging that the plaintiff, at the special instance and request of the intestate, performed work and labor for him for 19 years, continued:

"That on the 13th day of October, 1882, *she had a settlement with William R. Rushton,* then in life, for the services by her performed, *and the amount found to be due [her] was $2,000,* and the said Rushton then agreed to leave her by will the sum so found due her for services, and executed to her a written agreement, as follows: 'I promise Emily Caviness to give her two thousand dollars at my death, to take care of her children with, which she claims of my estate. She has been in my family nineteen years and a faithful servant and it is my will to her.'"

Of course, upon demurrer, these allegations were deemed to be admitted, and, thus presented, there could be no doubt but that they constituted a good cause of action. The plaintiff did not there, as here, rely solely upon the written instrument, but upon the facts as were alleged in the complaint which it is assumed she was prepared to prove. Naturally, and properly, the Court held:

"We are unable to perceive any infirmity *in this paragraph* [not in the written instrument] of the complaint. A promise supported by a valuable consideration *is well pleaded,* and the case is therefore unlike that of a voluntary promise to make a gift. The services were rendered in accordance with a precedent request, and after they were performed, a

settlement was had and their value agreed upon. Not only were all the elements of a valid contract present, but there was a full recognition, by the settlement, of the right to compensation, and an agreement as to the amount. What the parties have thus agreed upon and adjusted, the Courts have no right to disturb."

When it is remembered that all of the testimony of the defendant as to the character and value of his services, and as to an agreement by Mrs. Caskey to compensate him therefor, has passed out of the case by the exclusion of the Circuit Judge, it will be appreciated what little application the Caviness case has to the present, in which the contract is gathered from the questioned document alone.

It is perfectly plain, from the allegations of the sixth defense of the defendant's answer, treated as a counterclaim, that the conception of extracting a contract from the questioned document is an afterthought, more a suggestion of his Honor, the Circuit Judge, than a contention of the defendant. It is as follows:

"Alleges that at the special instance and request of the testatrix, Mrs. Henrietta H. Caskey, he performed for her for a number of years useful and valuable services, both as attorney and otherwise, in the management of her large estate and business affairs, advising her, renting out her lands, collecting rents, looking generally after her landed estate, and in managing and assisting her in the management of her business affairs, taking a great deal of time, involving expense and work, and that such services were reasonably worth the sum of $5,000 up to the time of her death in 1920, so that her executors should be required to pay him therefor"; plainly a cause of action upon a *quantum meruit* which necessarily concedes the absence of a contract.

The truth is that the defendant and the Circuit Judge are at variance as to the ground upon which the recovery has been allowed. The counsel for the defendant say in their printed argument:

"The answer sets up  *  *  *  (d) a claim by way of defense or by counterclaim upon *quantum meruit,* for services rendered and moneys expended, all evidenced by a written agreement to pay a reasonable sum or a fixed sum therefor."

The Circuit Judge bases his judgment upon the finding that the written instrument constituted a contract to pay $5,000, with interest from February 14, 1920.

These are entirely inconsistent theories.; one an implied, and the other an express, contract.

As the decree is based entirely upon the theory of a contract extracted from the document in question, I do not consider it necessary to discuss the defendant's counterclaim. Clearly, his counterclaim is not available to him in an action to have an alleged contract annulled.

Another matter: The defendant claims to have been the attorney and confidential adviser of his sister. The universal rule is that, when under these circumstances he claims the benefit of a transaction between himself and his client, the burden is placed upon him to establish clearly the absolute *bona fides* of the transaction. I cannot conceive of circumstances which would make this rule more imperative than those in the present case; and in my opinion the defendant has signally failed in carrying the burden.

This opinion was submitted as a dissenting opinion to that of the Chief Justice, and, having been concurred in by Justices Blease and Carter (Justice Stabler not participating), it becomes the judgment of the Court.

Decree reversed.

MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE STABLER did not participate.

MR. CHIEF JUSTICE WATTS (dissenting): For the reasons assigned by his Honor, Judge Dennis, it should be the judgment of this Court that the judgment of the Circuit Court be affirmed.