JENSEN, Appellant, v. JENSEN'S ESTATE, Respondent.

(253 N. W. 619.)

(File No. 7584. Opinion filed March 19, 1934.)

*Miller & Shandorf,* of Mitchell, for Appellant.

*Fellows & Fellows,* of Mitchell, and *D. K. Barrett,* of Plankinton, for Respondent.

CAMPBELL, J. In January, 1917, Andrew Jensen made, executed and delivered to his brother Jens Jensen an instrument in writing, photographic copy of which is as follows:

---

$ 7000.⁰⁰

Plankinton, S. D. Jan 16 ................ 19.17

after my death my estate must after date for value received, ~~I, or we or other of us promise to~~ pay to the order of

Jens Jensen

Seven Thousand ................................................ DOLLARS

with interest at 6 per cent payable semi annually at CASE & LATHROP STATE BANK, Plankinton, South Dakota. The parties of this note, as well as endorsers and guarantor, hereby waive notice of non-payment, protest and notice of protest. If any of the said interest should not be paid when due, the whole sum shall become due and payable at once. Both principal and interest shall bear interest at 12 per cent per annum after due.

Andrew Jensen

P. O ....................................

---

Andrew Jensen in his lifetime made no payments, either of principal or interest, upon the instrument. He died in 1931, being a resident of and leaving estate in Aurora county, S. D. Proceedings for the probate of his estate were duly instituted in the county court of Aurora county. Jens Jensen, being still the owner and holder of the instrument above set out, duly filed a claim thereon in the county court, which claim was rejected, whereupon the claimant (being also administrator of the Andrew Jensen estate) instituted the present action in the circuit court pursuant to section 3405, Rev. Code 1919, to recover upon the instrument, asking judgment for principal and interest in the sum of approximately $18,000.

Attorneys appointed by the judge of the county court to defend the action at the expense of the estate interposed an answer pleading, inter alia, that the instrument was intended as a testamentary disposition of personalty and was invalid because not ex-

ecuted in conformity with the laws of South Dakota relating to wills, and pleading the statute of limitations.

Upon the issues so joined the matter came on for trial without a jury. The court specifically found that the instrument was executed and delivered to evidence an existing debt owing by Andrew Jensen to Jens Jensen. It was plaintiff's contention that, according to the terms of the instrument, no principal or interest would become due or payable until after the death of the maker, Andrew Jensen. Defendant contended, upon the other hand, that although it appeared to be the intent of the instrument that the principal sum should not become due until after the death of Andrew Jensen (provided interest payments were meantime kept up), nevertheless it was the purport of the instrument that interest should become due and payable semiannually after the date of the instrument even during the lifetime of the maker, and that on default of any interest payment, by virtue of the acceleration clause, the entire amount evidenced by the instrument would immediately become due and payable and a cause of action for such entire amount would forthwith accrue against the maker in his lifetime which would be barred by the statute of limitations in six years if no payments were made there on. The scrivener of the instrument was Lizzie Jensen, wife of Jens Jensen, and the handwriting upon the face of the instrument, save only the signature of the maker, is hers. She testified without objection that the instrument was executed and delivered on the day of its date at the home of the decedent, in the presence of decedent, her husband, and herself, and that she filled out the instrument at the request of decedent by striking out some of the printed words and inserting the written words as shown upon the face thereof "the way he told me," and that Andrew Jensen then took the instrument, read it, signed it, and delivered it to Jens Jensen. She also testified without objection that it was agreed and stated between Jens and Andrew at the time of the execution of the instrument that none of the principal or interest was to be paid until after the death of Andrew.

The learned trial judge sustained the contentions of defendant and his conclusions of law were as follows:

"I. That the above written instrument matured and that the principal sum of Seven Thousand and 00-100 Dollars ($7,000.00)

mentioned therein, together with interest thereon became due and payable on the 17th day of July, 1917, at which date a cause of action accrued thereon in favor of the plaintiff and against said Andrew Jensen.

"II. That plaintiff's right of action upon the aforesaid written instrument and debt evidenced thereby was prior to the death of said Andrew Jensen and is now barred by the statute of limitations of this state."

From judgment entered pursuant to such conclusions in favor of defendant, and from a denial of his motion for new trial, plaintiff has now appealed.

Both parties in their briefs refer to the instrument in question as a "promissory note." Since one of the essential elements of a promissory note is that it shall contain an unconditional promise in writing engaging to pay, signed by the maker, it seems somewhat anomalous to hold that an instrument is a promissory note when it specifically fixes the due date at or after the death of the maker, thus showing that the performance of any such promise, so far as the maker himself is concerned, is neither intended nor possible. Nevertheless, where such an instrument does in fact contain the words "I promise to pay," or the equivalent thereof, it seems quite customarily denominated in the cases as a promissory note. It seems still more anomalous to call the instrument a "promissory note" where it contains no words of promise whatsoever on the part of the maker, though at least one case has done so (Hegeman v. Moon [1892] 131 N. Y. 462, 30 N. E. 487) on the theory that acknowledgment of indebtedness implies a promise to pay on demand. In the instant case the argument against deeming the instrument a promissory note is even stronger than in Hegeman v. Moon, for here, not only are words of promise by the marker absent from the instrument, but he caused the promissory words in the printed form to be deleted before attaching his signature. It seems more accurate to call such an instrument a covenant (Krell v. Codman [1891] 154 Mass. 454, 28 N. E. 578, 14 L. R. A. 860, 26 Am. St. Rep. 260) or contract (Kirkpatrick v. Kirkpatrick's Executors [1883] 6 Houst. (11 Del.) 569; Hydrick v. Hydrick [1927] 142 S. C. 531, 141 S. E. 156; In re Fuhrmann's Estate [1932] 209 Wis. 218, 244 N. W. 628; Sheehan v. Mercan-

tile Trust Co. [1919] 45 Ont. Law Rep. 422) rather than a promissory note. It is probably not very material, however, just what this instrument should be christened, or indeed whether it is christened at all. It contains an acknowledgment of indebtedness by the words "for value received" and is found by the court to have been given for an existing debt and constituted, in the language of the Delaware case above referred to, "debitum in presenti soluendum in futurio." Being founded upon full consideration, all the authorities hold that it is not revocable, nor ambulatory or testamentary in character, and if not outlawed the instrument is "a valid debt and claim against [the] estate, whether we call it a note, contract, or agreement." In re Burhans' Estate (1917) 100 Misc. 646, 166 N. Y. S. 1027, 1030. See also Note 2 A. L. R. 1471; Lawrence v. Scurry (1919) 187 Iowa, 1055, 175 N. W. 22; In re Griswold's Estate (1925) 113 Neb. 256, 202 N. W. 609, 38 A. L. R. 858; and cases cited supra.

Whatever the instrument may properly be denominated, the question here presented is one of interpretation of its terms. Looking at the first portion of the instrument, it provides: "After my death for value received my estate must pay to the order of Jens Jensen Seven Thousand Dollars with interest at 6 per cent." Not only is there no promise of any payment to be made by Andrew Jensen personally or in his lifetime, but words that might be deemed to import such a promise were stricken out of the printed form. From this portion of the instrument it seems clear beyond question that the time of payment is to be postponed until after the death of the maker of the instrument, and further that the fund from which payment is to be made is such estate as the maker may leave at his death. Respondent contends that a man has "estate" during his lifetime as well as after his death, and that the word may be "applied to the property of the living man as well as that of a decedent, a ward, a lunatic, or a bankrupt." This, of course, is true, broadly speaking, but from the context here it is entirely plain that by the words "my estate" the maker of this instrument intended to refer to such estate as he might leave at the time of his death, and the words "after my death" not only express time of payment, but also limit and qualify the words "my estate." Looking at the first portion of the instrument standing alone, we think it must be said that it exhibits very clearly an intention on the part of the

maker to defer all payments until after his death and to make such estate as he might leave at death the sole fund for such payment, and is utterly inconsistent with any intent to bind himself to pay anything (whether principal or interest) during his lifetime. Looking at the latter portion of the instrument, it appears to provide that interest shall be "payable semi-annually" and that, "If any of the said interest should not be paid when due, the whole sum shall become due and payable at once." If these printed words are to be given full force and effect, it is plain that the result cannot possibly be consonant with the intention clearly expressed in the first portion of the instrument that the maker shall not be liable for any payments during his lifetime, and that all payments shall be deferred until after his death. According to the printed language of the latter portion of the instrument, not only would the maker be liable for semiannual interest payments during his lifetime, but if he failed promptly to make any such semiannual interest payment he would immediately and in his lifetime become liable for the payment of the principal sum. Respondent urges that both portions of the instrument may stand together. Appellant maintains, on the other hand, that if not absolutely conflicting they create at least an ambiguity. Appellant urges that it must be held that there is a direct conflict between the two portions of the instrument and points out that the general intent is that the instrument should be paid after the maker's death and out of his estate, and invokes sections 880 and 883, Rev. Code 1919, reading respectively as follows:

"Particular clauses of a contract are subordinate to its general intent.

"Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected."

Appellant further urges that if this view should not be taken it must at least be held that there is sufficient ambiguity between the first and last portions of the instrument to justify resort to parole evidence as to the intention of the parties with reference to when interest should come due. Since the parole evidence in this case was admitted without objection and is undisputedly to the effect that the parties did not intend any payments, either of principal or interest, to be made or to come due during the lifetime of the

testator, the result here would be the same if appellant is right on either contention. We rather incline to the view that the instrument construed as a whole must be held to show upon its face the intention and contemplation of the maker that he should not be called upon to pay anything in his lifetime, either principal or interest, and that the fund which should make all payments was his estate after his death. However, we think we need not specifically determine that point, since we are of the opinion in any event that if the written portion of the instrument does not control the printed, it must at least, be said that the two together create an ambiguity explainable by parol.

The judgment and order appealed from are therefore reversed, and the cause is remanded, with directions to make conclusions upon the present findings and enter judgment in favor of plaintiff-appellant in harmony with the views hereinbefore expressed.

ROBERTS, P. J., and POLLEY and RUDOLPH, JJ., concur.
WARREN, J., dissents.